UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, ) | | |
| ) | 2:05-CV-1257-RCJ-PAL | |
| Plaintiff, ) | | |
| ) | | |
| vs. ) | **ORDER** | |
| ) | | |
| MATTHEW BRUTTIG, et al., ) | | |
| ) | | |
| Defendants. ) | | |
| ) | | |

This matter comes before the Court on Plaintiff All State Insurance Company's Motion for Summary Judgment. (#18.) Allstate seeks declaratory relief relieving it of any liability as to Defendant Matthew Bruttig in the underlying dispute between Bruttig and Dan Widoes, who were involved in a post-traffic accident physical altercation. The Court has considered the motions, the pleadings on file, and oral arguments on behalf of all parties. It is hereby ordered that Plaintiff's Motion for Summary Judgment (#18) is *granted*.

**FACTS**

On April 25, 2004, Matthew Bruttig was involved in a fender bender accident with Dan Widdoes in the parking lot of a swap meet. According to the police report, Widdoes approached Bruttig after the collision to "confront" Bruttig. Bruttig allegedly used profanity on exiting his vehicle and proceeded to push Widdoes into a passing vehicle, causing him to fall to the ground. Bruttig then began kicking Widdoes in the right side of his hip. Bruttig was cited for battery at the scene and Widdoes was transported by ambulance to the hospital. Widdoes later underwent surgery to fix his broken hip. The Clark County District Attorney

charged Bruttig with the crime of Battery with Substantial Bodily Harm and he was convicted by a jury on June 22, 2005.

On January 19, 2005, Widdoes filed suit against Bruttig in Nevada State District Court, alleging: (1) negligence; (2) infliction of emotional distress (intentional, reckless, and negligent); (3) assault; and (4) battery. Allstate Insurance Company covers Bruttig under two policies, homeowner's and automobile.  Bruttig's Homeowner's Policy contains the following pertinent language: "We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person. . . . This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime."  Deluxe Homeowner's Policy, Form AP780, Policy Number 036879485.  Likewise, Bruttig's Automobile Policy provides:

> Under these coverages, your policy protects an insured person from liability for damage arising out of ownership, maintenance or use, loading or unloading of an insured auto.
>
> <u>Exclusions – What is not covered</u>
>
> 7. bodily injury or property damage which may reasonably be expected to result from the intentional acts of an insured person or which are in fact intended by an insured person to the extent that the limits of liability for this coverage exceeds the limits of liability required by Nevada financial responsibility law.

Allstate Automobile Policy, Form AU127-1, Policy Number 036-650-001.

Allstate filed a declaratory relief action against Bruttig and Widdoes for a determination as to whether its two insurance policies cover Bruttig for his potential liability in the underlying litigation between the two parties.  Allstate claims that the language of the

policies and applicable case law relieve it of any liability connected with Bruttig's encounter with Widdoes.  The Court agrees.

## DISCUSSION

**I.     Summary Judgment Standard**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court.  *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  Summary judgment is proper if the evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). As summary judgment allows a court to dispose of factually unsupported claims, the court construes the evidence in the light most favorable to the nonmoving party.  *Bagdadi v. Nazari*, 84 F.3d 1194, 1197 (9th Cir. 1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323.  Once the moving party has met its burden, the party opposing the motion may not rest on the mere allegations or denials of its pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When the nonmoving party bears the burden of a claim or defense at trial, the moving party can meet its initial burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case.  *Celotex*, 477 U.S. at

325. Conversely, when the moving party bears the burden of proof at trial, then it must establish each element of its case at summary judgment.

**II.     Scope of the Allstate Insurance Policies**

Under Nevada law, an insurance policy should be interpreted broadly to grant the "greatest possible insurance to the insured." *Capitol Indemnity Corp. v. Wright*, 341 F. Supp. 2d 1152, 1156 (D. Nev. 2004). Any ambiguity in the insurance contract should be construed in favor of the insured. However, despite these general principles, courts are not to rewrite contract provisions that are otherwise unambiguous. Additionally, "a Nevada court will not increase an obligation to the insured where such was intentionally and unambiguously limited by the parties." *Id.* (citing *Senteney v. Fire Ins. Exch.*, 101 Nev. 654, 707 P.2d 1149 (1985)). When construing an insurance contract, "the terms of the parties should be taken and understood in their plain and ordinary and popular sense." *Richfield Oil Corp. v. Harbor Ins. Co.*, 85 Nev. 185, 452 P.2d 462, 466 (1969).

Insurers must defend any suit brought against its insured that potentially seeks damages within the scope of the policy. Courts are to determine "whether an insurer owes a duty to defend by comparing the allegations of the complaint with the terms of the policy." *United Nat'l Ins. Co. v. Frontier Ins. Co., Inc.*, 120 Nev. 678, 99 P.3d 1153, 1158 (2004). Courts recognize that the duty to defend is broader than the duty to indemnify. If "facts are alleged which, if proven, would give rise to the duty to indemnify, then the insurer must defend. . . . The potentiality of covered liability is the test." *Rockwood Ins. Co. v. Federated Capital Corp.*, 694 F. Supp. 772, 776 (D. Nev. 1988).

In comparing the allegations of Widdoes' Complaint with the terms of Bruttig's two

Allstate insurance policies, it is evident that Bruttig's actions are unambiguously excluded from the policies and that Allstate is consequently under no duty to defend or indemnify the Defendants.

      **A.     The Homeowner's Insurance Policy Does Not Cover Bruttig's Actions**

           **1.     Bruttig's Actions Are Not an "Occurrence" under the Policy**

Under Bruttig's homeowner's policy, Allstate provides coverage for bodily injury or property damage caused by an "occurrence" to which the policy applies. The policy defines an "occurrence" as an "accident . . . resulting in bodily injury or property damage." In construing a similar insurance policy, the Nevada Supreme Court defined the term "accident" as "a happening that is not expected, foreseen, or intended." *Beckwith v. State Farm Fire and Cas. Co.*, 120 Nev. 23, 83 P.3d 275, 276 (2004) (holding that a homeowner's insurance policy provided no liability coverage for insured's voluntary act of striking victim in face because of the intentional acts exclusion clause in the policy). In *Capitol Indemnity Corp. v. Wright*, 341 F. Supp. 2d 1152, 1157 (D. Nev. 2004), an intentional and criminal acts exclusion clause in a similar insurance policy barred coverage for the fraudulent actions of a nursing home employee with respect to a patient because the "acts were based on intentional conduct and [therefore were] not an 'occurrence' as defined in the Policy." *Id.*

Similarly, in this case, Bruttig's actions do not fall within the meaning of "occurrence" under the policy. The Complaint alleges that Bruttig physically attacked Widdoes during an altercation following a minor car accident. Such an attack cannot be construed as an "accident" under the Nevada definition. Therefore, the homeowner's insurance policy should not extend to cover Bruttig's conduct in the underlying litigation.

> 2. **The Second, Third, and Fourth Causes of Action are Excluded from Coverage under the Policy's Criminal/Intentional Acts Exclusion Clause**

Even if the Widdoes' injuries were "accidental" and thus an "occurrence" under the policy, they would still not be covered under the policy's exclusionary provisions. Bruttig's homeowner's policy specifically excludes coverage for any "bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, an insured person." Bruttig's actions were both intentional and criminal, and thus clearly fall within the scope of the exclusion.

Bruttig's criminal conviction triggers the Allstate exclusion clause and bars coverage for Widdoes' injuries. By using the disjunctive "or" the exclusion clause precludes coverage for either the criminal or intentional acts of the insured. Therefore, it is possible to read the clause such that criminal actions preclude coverage, whether they are intentional or not. Almost every jurisdiction that has considered the issue supports this broad construction of the "criminal acts" language of the exclusion. *See, e.g., Allstate Ins. Co. v. Brown*, 16 F.3d 222, 226 (7th Cir. 1994) (Allstate's criminal acts exclusion clause excludes criminal recklessness); *Allstate Ins. Co. v. Burrough*, 914 F. Supp. 308, 312 (W.D. Ark. 1996) (the clause "includes all criminal acts, no matter what the mental state required for their commission); *Allstate Ins. Co. v. Schmitt*, 238 N.J. Super. 619, 570 A.2d 488, 492 (1990) (interpreting "criminal act" as not modified by any culpability requirement). This case law suggests that it is not necessary to determine whether Bruttig acted intentionally in attacking Widdoes. The fact that he was convicted of a criminal offense triggers the exclusion clause and bars coverage.

Even if the exclusion clause is interpreted to require showing of intentional conduct, Bruttig's actions would still not be covered under the "intentional conduct" section of the exclusion clause.  The Allstate policy's specific language has been analyzed by several jurisdictions, all of which indicate that the exclusion for intentional acts is unambiguous and should be analyzed under an objective standard.  For example, in *Allstate Ins. Co. v. Foster*, 693 F. Supp. 886 (D. Nev. 1988), the court construed an almost identical exclusion clause in a mobilehome policy to determine if the insurance company was potentially liable for sexual misconduct performed by the insured against a minor.  The court held that the clause "unambiguously refers to the expectations of a reasonable person" that should be determined by an objective standard.  *Id.* at 888.   Applying this standard to the actions of the insured, the court held that intent could be inferred from the insured's sexual contact with a minor, "regardless of the insured's subjective intent," and the intentional acts of the insured were therefore excluded from coverage under the insurance policy.  *Id.*

Case law from numerous other jurisdictions supports this plain language interpretation of the Allstate exclusion clause.  *See Allstate Ins. Co. v. Brown*, 16 F.3d 222, 225-26 (7th Cir. 1994) (following other decisions in interpreting the policy to unambiguously provide for an objective standard); *Allstate Ins. Co. v. Cruse*, 734 F. Supp. 1574, 1581 (M.D. Fla. 1989) (exclusion clause requires court to apply objective standard); *Allstate Ins. Co. v. S.L.*, 704 F. Supp. 1059, 1060 (S.D. Fla. 1989); *Hooper v. Allstate Ins. Co.*, 571 So.2d 1001, 1002-03 (Ala. 1990); and *Allstate Ins. Co. v. Sowers*, 97 Or. App. 658, 776 P.2d 1322, 1323 (1989).

The Complaint in this case alleges causes of action for Intentional Infliction of

Emotional Distress, Assault, and Battery, all of which require a showing that Bruttig acted intentionally. Applying the objective standard to Bruttig's actions, a reasonable person would expect Widdoes' damages to result from Bruttig's violent behavior. Bruttig himself almost assuredly expected his actions to cause Widdoes bodily harm, though the case law does not additionally require that he possess this subjective expectation. Because the second, third, and fourth causes of action of the Complaint all allege intentional conduct by Bruttig, the intentional acts exclusion clause relieves Allstate of any potential liability in the underlying litigation between Bruttig and Widdoes.

### B. The Negligence Cause of Action Should Also be Excluded Coverage under the Policy

A more difficult issue is whether the Complaint's negligence cause of action should also fall within the scope of the exclusion clause. While the other causes of action are grounded in Bruttig's intentional conduct, the first cause of action merely alleges that Bruttig negligently injured Widdoes during their altercation, with no reference to intent. Even though the negligence cause of action does not allege intentional conduct, the alleged negligent actions arose out of intentional and/or criminal actions, thereby also excluding the negligence claim from coverage under the policy too.

First, as already discussed, courts have interpreted the criminal acts exclusion clause to bar coverage for any criminal act, whether or not such act was intentional. Because Widdoes' injuries resulted from Bruttig's criminal acts, the criminal acts exclusion clause is triggered, even for allegedly negligent behavior.

If, however, the criminal acts exclusion is interpreted to not apply to Bruttig's allegedly negligent conduct, such conduct is still precluded from coverage. Courts have evaluated a string of cases involving negligence actions tied to assault and battery. In most of these cases, the pertinent insurance clause excluded all damages "arising out of assault and battery," which is similar to the clause in this case which excludes damages which may result from "intentional or criminal acts" of the insured. In all of these cases, the reviewing court held that the exclusion clause unambiguously excluded any damage resulting from negligent actions arising out of assault or battery. For example, in *Capitol Indem. Corp. v. Blazer*, 51 F. Supp. 2d 1080 (D. Nev. 1999), the plaintiff was assaulted during a bar fight and sued his attackers in intentional tort and the bar under a negligent supervision theory. The bar's general commercial insurance policy precluded coverage for any injury "arising out of assault, battery, or assault and battery." *Id.* at 1082-83. The court held that the negligence claim against the bar was prohibited by the policy because it arose out of assault and battery. *Id.* at 1086-88. The *Blazer* court noted that the Nevada Supreme Court had previously "followed a broad inclusive interpretation of such [assault and battery exclusion] provisions." *Id.* at 1087 (citing *Hernandez v. First Fin. Ins. Co.*, 106 Nev. 900, 802 P.2d 1278, 1280 (199) (finding no insurer duty to defend against negligent hiring claim where policy barred coverage of "any . . . omission in connection with the prevention" of assault and battery)).

It appears that all courts that have evaluated such assault and battery exclusionary policies have construed them to bar appended negligent claims that arose out of the underlying assault and battery. *See Eady v. Capitol Indem. Corp.*, 232 Ga. App. 711, 502 S.E.2d 514, 516 (1998) (denying coverage); *Capitol Indem. Corp. v. Callis*, 963 S.W.2d 247,

250 (Mo. Ct. App. 1998) (finding the plaintiffs' claims to be premised on assault and battery and denying coverage); and *Berg v. Schultz*, 190 Wis.2d 170, 526 N.W.2d 781 (Ct. App. 1994) (same).

When construing broader insurance clauses that prohibit coverage for all damages resulting from intentional or criminal acts, like the exclusion clause in this case, most courts apply a "but for" analysis to any added negligence claims and deny coverage. For example, in *Allstate Ins. Co. v. Steele*, 74 F.3d 878 (8th Cir. 1996), a minor was raped by her stepbrother while she was visiting her father and stepmother. The minor's mother sued the stepbrother for assault, battery, and intentional infliction of emotional distress, and the father and stepmother for negligent supervision. *Id.* at 880. The father and stepmother had an Allstate Homeowner's insurance policy that excluded damages resulting from acts that are "intended or expected to cause bodily injury." *Id.* The court held that both the intentional claims against the stepbrother and the negligence claims against the parents were precluded under the policy. The court reasoned that "the policy does not cover damages 'resulting from' intentional misconduct. . . . Even if we assume that [the father and stepmother] failed to supervise [the stepbrother] adequately, [the minor] would not have been injured *but for* the [stepbrother's] intentional misconduct." *Id.* at 881. In a similar case, the Nevada Supreme Court held that such intentional acts exclusion policies do not cover "bodily injury or property damage which . . . is . . . caused intentionally by or at the direction of an insured; or . . . results from any occurrence caused by an intentional act of any insured where the results are reasonably foreseeable." *Fire Ins. Exch. v. Cornell*, 120 Nev. 303, 90 P.3d 978, 979 (Nev. 2004).

While most courts follow the above cited cases in precluding coverage of negligence claims that are appended to intentional acts claims when there is an applicable exclusion clause, one recent case in the District of Nevada came to a different conclusion.  In *Capitol Indem. Corp. v. Wright*, 341 F. Supp. 2d 1152 (D. Nev. 2004), a nursing home patient sued the home and its employee for the employee's fraudulent conversion of the patient's money.  The plaintiff alleged fraud and conversion against the employee and negligent supervision and hiring against nursing home.  *Id.* at 1154, 1156.  As previously noted, the court held that the exclusion clause barred coverage for the fraud and conversion claims, as they were grounded in intentional conduct.  *Id.* at 1157.  However, the court held that the negligence claims against the nursing home were not barred by the exclusion clause.  *Id.* at 1157-58.  The court held that the intentional acts exclusion could only apply to the intentional misconduct by the employee, not the alleged negligent conduct by the nursing home.  *Id.*

The court rejected the nursing home's argument that the alleged negligent conduct did not constitute an "occurrence" under the policy because it was based on the employee's intentional behavior.  Any negligence by the nursing home would be an "occurrence" because when "an injury occurs without the agency of the insured, it may be logically termed 'accidental,' even though it may be brought about designedly by another person. . . . The test of whether an injury is a result of an accident is to be *determined from the viewpoint of the insured* and not from the viewpoint of the one that committed the act causing the injury."  *Id.* at 1158 (quoting *Silverball Amusement, Inc. v. Utah Home Fire Ins. Co.*, 842 F. Supp. 1151, 1157-58 (W.D. Ark. 1994) (emphasis added by court)).  The critical fact leading to the nursing home's liability was the fact that the intentional injurious conduct was committed by

a third party, and was therefore accidental as to the insured party (the home).  This meant that the intentional acts exclusion did not apply to negligent acts performed by the insured party in preventing intentional harm by a third party, such as the nursing home's negligent hiring and supervision of the employee.

This case is distinguishable from *Wright*.  In *Wright*, the negligence claims survived the exclusion clause because the alleged intentional acts were performed by a third party, and were "accidental" (and thus an "occurrence") as to the insured party.  In this case, both the intentional and negligent acts were performed by the same party, Bruttig.  The Nevada Supreme Court has interpreted the term "accident" in homeowner's insurance policies as "a sudden event . . . neither expected nor intended by the insured," and barred coverage that did not arise from such "accidents."  *Mallin v. Farmers Ins. Exch.*, 108 Nev. 788, 839 P.2d 105, 107 (1992).  There is no way to construe Bruttig's actions to fall within this definition of an "accident."  Bruttig allegedly acted intentionally in attacking Widdoes, and any damages stemming from negligence would directly arise out of this intentional behavior and therefore be fully expected.  Because the negligence claim in this case deals with the same defendant and behavior as the intentional tort claims, the "but for" analysis discussed above should control and the homeowner's policy should be construed to unambiguously exclude coverage for both the negligence and intentional tort causes of action under the Complaint.

      **C.**      **Further Factual Investigation Is Not Necessary**

Widdoes' contends that it is too soon for summary judgment until there has been a more thorough investigation of the altercation.  Widdoes specifically argues that there still exists a genuine issue of material fact as to whether Bruttig's actions were intentional.  It

should first be noted that Widdoes here wants to have it both ways.  He alleges in the Complaint that Bruttig intentionally assaulted him, but he wants to cast some cloud on whether the attack was intentional for purposes of evading summary judgment.  Leaving that aside, the court does not need any more information to determine if Bruttig's insurance policy will cover Widdoes' injuries.  The essential facts are clear: (1) there was a violent altercation in which Bruttig injured Widdoes; (2) Widdoes alleges infliction of emotional distress, assault, battery, and negligence; and (3) the Allstate insurance policy excludes coverage for injuries resulting from criminal or intentional acts by the insured.  No further factual development is needed to decide the issues on summary judgment.

### III.     The Automobile Insurance Policy Should Not Cover Bruttig's Actions

Bruttig's Allstate automobile insurance policy also does not provide coverage for Widdoes' injuries.  The automobile policy provides coverage for "damages arising out of the ownership, maintenance or use, loading or unloading of an insured auto."  It further excludes coverage for injuries which "may reasonably expected to result from the intentional acts of an insured person or which are in fact intended by an insured person."  Widdoes' injuries in this case fail under both aspects of the policy.  They did not arise out of the use of an auto and they resulted from the intentional acts of the insured.

While Nevada courts do not seem to have entertained the issue, other jurisdictions uniformly deny automobile coverage when the injuries result from incidents not directly associated with use of the auto.  For example, in *State Farm Mut. Auto Ins. Co. v. Fernandez*, 767 F.2d 1299 (9th Cir. 1985), the plaintiff was stabbed during a road rage incident after both he and the defendant exited their vehicles.  The defendant was uninsured and the plaintiff

sought coverage under the uninsured benefits section of his policy, which promised coverage for all injuries "arising out of the ownership, maintenance or use of [an] uninsured motor vehicle." *Id.* at 1301.  The court held that the plaintiff's stabbing injuries were not covered under the policy because they did not arise from the use of an uninsured motor vehicle.  *Id.* at 1302.

Similarly, in *Laycock v. American Family Mut. Ins. Co.*, 682 N.E.2d 382 (Ill. App. 3d 1997), the court ruled that coverage did not exist where, following a near collision, the uninsured driver used his vehicle to stop and trap the claimant and then exited his vehicle and assaulted the claimant through an open window of his car.  "The act of leaving the vehicle and inflicting a battery is an event of independent significance which is too remote, incidental, or tenuous to support a causal connection with the use of the vehicle." *Id.* at 385.

Other cases follow *Fernandez* and *Laycock* in denying coverage when the injury results from an incident independent from the use of an automobile. *See Stenger v. Lawson*, 767 N.E.2d 304 (Ohio App. 3d 2001) (denying coverage for altercation between drivers after they exited their vehicles); *Farmers Ins. Co. of Arizona v. Sedillo*, 11 P.3d 1236, 1238 (Ct. App. N.M. 2000) (refusing coverage for post road-rage fight between drivers because there was no "sufficient causal nexus between the use of the vehicle and the resulting harm"); and *Race v. Nationwide Mut. Fire Ins. Co.*, 542 So.2d 347 (Fla. 1989) (denying coverage for fight between drivers because auto "must, itself, produce the injury").

While most of these cases involve the interpretation of an uninsured benefits provision of an auto insurance policy, the underlying policy language and substantive issue is identical: whether injuries stemming from an altercation happening outside of the autos arise

out of the use of a motor vehicle.  In all cases, the courts hold that such injuries do not arise out of the use of the auto and deny insurance coverage.  In this case, the altercation between Bruttig and Widdoes clearly took place after each party had exited their vehicle.  Their respective cars had nothing to do with the actual injuries that Widdoes suffered.  Therefore, Bruttig's Allstate auto policy should not cover Widdoes' injuries.

      Widdoes cites two cases for the proposition that the auto policy covers injuries bearing almost any causal relationship with the use of a motor vehicle.  One court stated that the "arising out of the use" language of an auto policy has "broad and comprehensive application, and affords coverage for injuries bearing almost any causal relation with the vehicle."  *State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal.3d 94, 514 P.2d 123, 127 (1973).  Similarly, in *Interinsurance Exch. v. Flores*, 45 Cal. App. 4th 661, 668 (1996), the court held that auto policies afford "coverage for injuries where the insured vehicle bears almost any causal relation to the accident at issue, however minimal."  *Id.* (internal quotations omitted).  But these cases are factually inapposite to our case.  The first case involved an injury to a passenger when a gun discharged as the passengers hunted from their moving vehicle.  *Partridge*, 514 P.2d at 123.  The second case involved a drive by shooting.  *Flores*, 45 Cal. App. 4th at 667.  Thus, in each case the injury was sustained while the auto was still being operated.  The above cited cases dealing with post-accident altercations are much more factually similar to the case at hand.  This case should thus follow their decisions in refusing to extend coverage to the injuries arising out of the Bruttig-Widdoes' altercation.

      As with the homeowner's insurance policy, there is no genuine issue of material fact that should be left for the trier of fact.  The record shows that Widdoes was injured during a

post-accident altercation that occurred after both parties exited their vehicles. The automobile policy plainly excludes injuries not resulting from use of an auto. Therefore, summary judgment is appropriate.

## CONCLUSION

Therefore, IT IS HEREBY ORDERED that Allstate's Motion for Summary Judgment (#18) is *granted*. Neither of Defendant Bruttig's insurance policies cover the injuries at issue in the underlying litigation between Bruttig and Widdoes, and Allstate should therefore be relieved of any potential liability.

DATED: November 2, 2006.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE